ROBERT CAUGHIE v. SEBA S. BROWN and Another.[1]

February 6, 1903.

Nos. 13,235—(234).

### License to Cut Trees—Ownership of Land.

A written instrument construed. *Held* to be, in legal effect, a permit or license to cut and remove all trees upon the lands described therein to which the licensor had any right, title, or interest, and, further, that it conferred no consent or authority on the licensee to cut trees upon land to which the licensor had no right, title, or interest, although such land was described in the permit or license. *Held*, further, that such consent or authority is expressly and explicitly withheld by the terms of the instrument.

### Unauthorized Cutting.

Simultaneously with this instrument the licensee executed and delivered to the licensor a mortgage upon the trees covered by the permit, to secure the payment of the purchase price. The licensee subsequently cut trees upon plaintiff's land to which the licensor had no right, title, or interest, but which were described in the permit. *Held*, in the absence of further proof connecting the licensor with the trespass he could not be compelled to respond in damages.

Action in the district court for Crow Wing county to recover from defendants, Seba S. Brown and D. W. Billings, $1,050, treble damages, for trespass upon plaintiff's land. The case was tried before McClenahan, J., and a jury, which rendered a verdict in

[1] Reported in 93 N. W. 656.

favor of plaintiff for $200. From an order denying a motion for a new trial, defendant Brown appealed. Reversed.

*Wilson & Van Derlip*, for appellant.

The deed to Billings conveyed Brown's interest only, if any, and, if he had none, imposed no liability upon him—either to Billings or any third person. Martin v. Brown, 4 Minn. 201 (282); Hope v. Stone, 10 Minn. 114 (141); Everest v. Ferris, 16 Minn. 14 (26); Bemis v. Bridgman, 42 Minn. 496; Brame v. Towne, 56 Minn. 126, 128; Washington Life Ins. Co. v. Marshall, 56 Minn. 250, 255; Mitchell v. Chisholm, 57 Minn. 148, 153; Hulett v. Hamilton, 60 Minn. 21, 23; Brown v. Jackson, 3 Wheat. 449, 452; Field v. Columbet, 4 Saw. 523, Fed. Cas. No. 4764; Allen v. Holton, 20 Pick. 458; Sweet v. Brown, 12 Metc. (Mass.) 175; Hoxie v. Finney, 16 Gray, 332; Knight v. Campbell, 76 Iowa, 730; Rogers v. Chase, 89 Iowa, 468.

A license to enter upon lands and cut timber thereon which is owned by the grantor and none other does not render the grantor an accessory to the cutting of timber not owned by him. Allen v. Holton, supra; Sweet v. Brown, supra; Knight v. Campbell, supra.

Trespass is a wrong done, with force, to the person, property, or rights of another. No wrong or force is shown upon the part of Brown, either directly or by his consent or procurement, or to his knowledge. Moak's Underhill, Torts, 3, 4, 10, 16, 350, 565; Bishop, Non-Contract Law, §§ 4, 22; Holly v. Boston, 8 Gray, 123, 130; Benton v. Beattie, 63 Vt. 186.

The giving and receiving of the mortgage had no more effect upon the rights of the parties, one way or another, than would the giving by Billings of any collateral security having no reference to the logs. Its execution and delivery were competent as between the parties and did not affect the nature of the transaction. Bemis v. Bridgman, supra.

*J. H. Warner*, for respondent.

The law permits the party injured to treat all concerned in the injury as constituting together one party, by their joint co-operation accomplishing certain injurious results, and liable to respond to him in a gross sum as damages. Cooley, Torts (2d Ed.) 152, 153.

The deed to Billings was, at least, a consent on the part of defendant Brown to the cutting and removal of the timber on plaintiff's land, and as such made Brown liable in damages. Sanborn v. Sturtevant, 17 Minn. 174 (200). By the deed Brown licensed and permitted Billings to enter upon the land and cut the timber. This license was irrevocable by the grantor, and it was unnecessary for him to ratify the acts of defendant Billings which were intended to be done and were done under this authority given by Brown. Bolland v. O'Neal, 81 Minn. 15. The acts of trespass were committed by force and against the consent of the plaintiff. Cooley, Torts (2d Ed.) 145.

COLLINS, J.

This appeal is from an order of the district court denying the motion of defendant Brown for a new trial. The action was brought to recover treble damages, under the statute, for trespass upon forty acres of land belonging to plaintiff; the act complained of being the alleged cutting and removal of the standing trees by both defendants.

For some reason not appearing, Brown was not present, nor was he represented by counsel, at the trial. Defendant Billings appeared personally and with counsel, and admitted that he cut and removed the trees himself, believing that he had written authority so to do from Brown; and the alleged authority was shown. The trial court charged the jury that plaintiff was entitled to recover the actual value of the timber as against both defendants, and a verdict for the sum of $200 was returned. The contention on appeal from an order denying Brown's motion for a new trial is that the verdict was contrary to law, as against him, because it was wholly unsupported by the evidence. This is the only question, and the facts are undisputed.

Plaintiff was the owner of the land under a government patent issued in 1885. In November, 1897, defendant Brown, his wife joining, executed and delivered to Billings an instrument in writing, which was thereafter duly recorded, and it is upon this instrument, Billings' mortgage, executed simultaneously and given to secure the purchase price ($1,500), and some letters written by Brown to the attorney for Billings in response to notice from the

latter that the plaintiff claimed to be owner of the land, that the verdict rests as against Brown.

It is apparent that Brown and his wife, in executing the instrument before mentioned, which, in law, amounted to a permit or license to cut and remove timber, used a blank quitclaim deed; and the real question in the case is the construction which must be placed upon this instrument, and its legal effect. It is set out at length in the record, and by its operative words the parties of the first part (Brown and his wife) remised, released, and quitclaimed to Billings, party of the second part, his heirs and assigns, all of their "right, title, and interest in and to the oak and pine trees on the following lands." Then followed a description of over forty-eight hundred acres of land, and included therein was the forty which, as before stated, actually belonged to the plaintiff. Immediately following this description, authority was given to Billings to enter upon the lands and cut and remove trees for the period of three years from date, and then it was declared that it is

"The purpose of this instrument to transfer to the said party of the second part by this deed, and on the delivery thereof, all the right, title, and interest that we, the said grantors, have, and that either of us has, and no other; the said grantee being, as to the ownership of the said trees and the timber and logs to be cut therefrom, in all respects the successor in interest of both and each of us, having our rights in respect thereto, and none other."

Now, what was the purpose and the intention of the parties by the execution, delivery, and acceptance of this instrument? What did defendant Brown convey by it, and what acts did he sanction? What trees did Brown authorize Billings to cut, and what timber did the permit or license cover, so that the cutting or removal by Billings can be attributed to any of Brown's acts, as evidenced by the writing? In what clause of the permit do we find any language upon which to base the assertion that Brown, when using it, encouraged or even consented to the cutting or removal of trees from plaintiff's land, to which he had no title, and in which he had no interest? To affirm the order appealed from, it must appear that, by means of the writing, Brown actively or passively approved of or consented to the trespass.

Under our statute, a quitclaim deed passes all of the estate which the grantor can convey by deed of bargain and sale. It is the mode adopted for the conveyance of land where the grantor does not propose to be held responsible for the condition of the title, and, when he thus conveys, it is immaterial to him whether he has title or not. It passes such rights and interests as the grantor possesses at the time, but by its execution and delivery a grantor does not affirm that he is possessed of any title whatsoever. Such a deed is in legal effect a refusal to fix the extent of the interest held by the grantor, and is accepted by the grantee with such a condition or refusal annexed. It is therefore plain that had Brown conveyed the land itself by quitclaim deed, and Billings had immediately entered upon the same and cut the timber, the former, in the absence of anything further connecting him with the cutting, could not be held in an action of this character. Now, did this permit to cut and remove trees, timber, and logs have any greater scope or effect than a quitclaim deed would have had? In the one case the authority, whatever its extent may be, is expressed. In the other it arises by operation of law. The intent of the parties to the instrument, as manifiested by the language used, must be allowed to govern when construing it, and to control the rights of plaintiff arising through it, as against the defendant Brown.

To a majority of this court this question seems not complicated or difficult. Not only was Billings' right to cut expressly circumscribed, confined, and restricted, by the operative words found in the instrument, to trees on land to which Brown had some right, title, and interest, but it was provided further, and ex industria, that the purpose of the instrument was to transfer to Billings nothing more than the right, title, and interest that the Browns had in the oak and pine trees, and "no other" right, title, or interest, and, again, that the grantee, Billings, should be, as to the ownership of said trees, and the timber and the logs to be cut therefrom, the successor in interest in all respects of both and each of the Browns, having their rights in the trees, timber, and logs to be cut and removed, and "none other." The instrument, fairly construed, is more limited and circumscribed in its effect and opera-

tion than would have been an ordinary quitclaim deed of the land, or an ordinary permit or license giving and granting to Billings the right to enter upon certain described land, and to cut and remove such trees as the Browns had some right, title, or interest in. There was no evidence tending to show that Brown advised, controlled, or influenced Billings, or that any act of Brown was the efficient cause of the wrong, except as we may gather from the instruments, and the fact that the latter actually did the cutting. The license was in explicit terms confined to the trees in which Brown had a right, title or interest; and what trees were affected by it depended not upon what trees Billings cut, but entirely upon what trees he had a right to cut.

The proximate cause of the trespass was Billings' act, over which Brown had no control, and could not have prevented,—an act which could have been performed irrespective of the license. Billings was put upon his guard by the restrictive character of the permit, and under it he acquired no authority to enter upon plaintiff's property, and no license to cut any timber thereon. There is no law in this state which forbids the sale of timber held by doubtful title, or of land adversely claimed or possessed by another person, when nothing more is conveyed than the doubtful title. As was said in a similar case (McClanahan v. Stephens, 67 Tex. 354, 3 S. W. 312): "There is no law in force in this state which forbids the sale of land held by doubtful title, or of land adversely possessed by some other person; and such a sale cannot be said to be illegal when considered even in relation to one holding the possession or superior title, for it deprives such person of no right. One cannot be said to be a trespasser by reason of having done some act not illegal in its nature."

In whatever way this case may be examined, we are compelled to face the proposition that Brown, ex industria, as he had a legal right to do, excepted from the operation of the permit and license the trees and timber upon land not owned by him, although such lands might be included in the description. If he did this, it is plain that he did not countenance, participate in, or consent to the cutting of trees on plaintiff's land, because he expressly withheld

consent. There is nothing in the case to show that he knew that Billings intended to cut timber upon land to which Brown had no title whatever. It will be borne in mind that this is not a case where the license or permit to cut timber was unrestricted in its terms, and by implication, at least, conferred unlimited authority and right over all lands described.

Referring to the mortgage which was given to secure the payment of $1,500 purchase price (a little over 30 cents an acre), it is plain from its language that it covered such trees, timber, and logs as Billings had been licensed to cut, and none other. It was as restrictive as the permit. It is also plain that it could not and did not cover the trees or timber subsequently cut upon plaintiff's land. Brown could at no time exercise dominion over them, and there is nothing to show that he ever attempted it, or even that he was paid out of moneys derived from the sale of those trees or that timber. Had Brown asserted a right to possession, such right could have been successfully contested upon the ground that the trees belonged to plaintiff, and not to him, and that from the express terms of the permit they were excepted from its operation as well as from the mortgage. Again, if plaintiff had brought an action against Billings to recover possession of the logs, or if he had brought this action against the latter alone, and had succeeded in either, no one would contend that Billings could successfully maintain an action against Brown for damages. He would be met at once by the express terms of the permit. Surely its scope and effect and construction must be the same in all litigation and under all circumstances.

From the order appealed from, it is apparent that the court below regarded this case as controlled by Sanborn v. Sturtevant, 17 Minn. 174 (200). Although that action was in trespass for cutting and removing logs from plaintiff's land, it was shown that the defendant, Sturtevant, claimed, and persisted in claiming, that he was the owner of the premises upon which the logs were cut, and that he had a good right to sell and convey them, and also that he aided in the sale of the logs by the actual trespasser after being informed that they were cut upon lands claimed by the plaintiff. The force of that decision depends entirely upon the

facts therein appearing, which were altogether different from those now under consideration.

The letters referred to and introduced in evidence were written to plaintiff's attorney by Brown upon notice of plaintiff's claim for trespass. In one he expressed a willingness to pay any reasonable amount for the timber that the parties could agree upon, if he found the claim a meritorious one. Another was explanatory of a delay in investigating the claim. Another, stating that one Joseph Dean deeded the forty in question to him before the license or permit was executed, and again expressing a disposition to equitably adjust the matter. The last was to the effect that, having ascertained the real status of the claim and his legal rights under the permit, he had discovered that he was not liable in any degree for the trespass, because he had simply conveyed to Billings such trees and timber as he had title to, and nothing more or further. These letters were of no probative force on the question under consideration. They simply indicated a laudable disposition to settle with plaintiff if, upon investigation, the writer found that he was liable. In no manner did they tend to establish plaintiff's contention that Brown consented directly or indirectly to the trespass.

Order reversed and new trial granted.

START, C. J. (dissenting).

I dissent. The deed and mortgage here in question assume, and it is apparent therefrom that the parties thereto understood, that the grantor, Brown, had some interest in the timber standing upon the land therein described, although he did not warrant such interest. By the express terms of the deed, Billings was given

"For the period of three years from the date of this deed, and no longer, leave, license, and permission to enter upon said land and to cut and remove the said trees, any and all of them, from the said land."

Then follows a declaration of the purpose of the instrument · as set out in the majority opinion.

The mortgage to secure the purchase price purported to sell and transfer to the mortgagee, Brown, all the oak and pine trees,

and the timber and logs to be cut therefrom, on the lands therein described. Then followed the words,

"Said lands being the same, the oak and pine trees on which were this day transferred to me by the said Seba S. Brown by quitclaim deed."

The mortgage also contained a covenant to the effect that the pine logs and timber shall, before they are removed from the land, be marked with the log mark of Brown, and so remain until the mortgage debt is paid; then to be transferred by him to Billings, or to such other person as he may designate.

That Brown understood that he had authorized Billings to enter upon the land described in the deed and mortgage, and so intended to do, is evident from his admissions given in evidence in the form of letters to the plaintiff's attorneys in response to a claim made for compensation for trees cut on plaintiff's land. In one of the letters he said:

"If I permitted Mr. Billings to cut timber there, I certainly had very good reason for doing so. If it turns out that I have no title to that land, of course the matter can be equitably adjusted. There need be no trouble about it,—I think Mr. Caughie knows something of me,—but I must first have time to ascertain the facts as to title and the cutting."

And in the other:

"I will endeavor to ascertain whether Mr. Billings cut the timber which you find has been cut from lands claimed by Mr. Caughie, and if he did cut it, and if the title to the lands is in Mr. Caughie, I will pay to Mr. Caughie the reasonable amount that we will agree upon."

Three weeks later he wrote:

"I find that I am not liable to any degree in the matter. I simply conveyed to Mr. Billings what right and title I had in that timber, and he took that right, and nothing more."

It also appears from the undisputed evidence that Billings entered upon the plaintiff's land under his deed, believing he had a right to do so, cut the timber thereon, and paid Brown for it.

It seems to me that the evidence was sufficient to support the verdict.

LEWIS, J. (dissenting).

The effect of the stipulation concerning title, as between the parties to the contract, was to confer no greater title than the grantor possessed, but such restriction is not necessarily inconsistent with the claim of ownership by assuming to convey the timber, and granting license to cut and remove it.  I consider the evidence sufficient to hold the grantor as a joint trespasser, and concur with the Chief Justice.