IN RE APPLICATION OF CITY OF ST. PAUL TO
REGISTER TITLE.
CITY OF ST. PAUL v. JANE C. DAHLBY AND OTHERS.
HAROLD DUROCHER AND OTHERS, APPELLANTS.

123 N. W. (2d) 586.

August 16, 1963—No. 38,986.

*George D. Young* and *Gottlieb & Shaw,* for appellants.

*Donald L. Lais,* Corporation Counsel, and *Thomas J. Stearns,* Assistant Corporation Counsel, for respondent.

THOMAS GALLAGHER, JUSTICE.

On April 24, 1961, these proceedings were instituted by the city of St. Paul in the District Court of Ramsey County for the purpose of registering in the office of the registrar of titles of Ramsey County its title to the following described real property situated in Ramsey County:

"Block Six (6), Bazil and Guerin's Addition to Saint Paul, according to the recorded plat thereof on file and of record in the office of Register of Deeds in and for Ramsey County, Minnesota."

Subsequently, defendants J. A. Painter, F. B. Schultz, Ruth Arvidson, Erv Rawson, Mae Dansereau, George Bryant, Harold Durocher,

Robert B. Lefebvre, and Curtis Houck, as heirs at law of Charles Bazil and Annie J. Bazil, his wife, interposed a joint answer and appeared in the proceedings claiming title to the property on the basis of evidence hereinafter outlined.

On August 22, 1962, the court made findings and ordered judgment, adjudging that the city of St. Paul was owner in fee simple of the premises and that defendants had no right, title, or interest therein and granting the city's application to register title thereto in its name. Judgment to such effect was entered and this appeal therefrom by defendants followed.

With respect to title to the premises the record indicates the following: On February 7, 1851, the territorial legislature enacted L. 1851, c. 2, "to provide for the erection of Public Buildings in the Territory of Minnesota." It included provisions as follows:

"* * * The Capital or Public Buildings for the sessions of the Legislative Assembly, and the Supreme Court of the Territory, the Library, and for the use of such officers of the Territory as may be prescribed by law, shall be erected at a central point in the Town of St. Paul * * *.

\* \* \* \* \*

"Sec. 3.   An election shall be held in the several precincts in this Territory, on the second Monday in April, one thousand eight hundred and fifty-one, for the election of four Commissioners of Public Buildings * * *.

\* \* \* \* \*

"Sec. 6.   The persons so elected and qualified, shall meet at Saint Paul, on the third Monday in the month of May, A. D. one thousand and eight hundred and fifty-one, and together with the Governor of the Territory, shall constitute a board of Commissioners on Public Buildings, for the Territory of Minnesota.

\* \* \* \* \*

"Sec. 9.   At the said first meeting of the Board, the members thereof, shall elect one of their number Treasurer of the fund appropriated by Congress, for the erection of the Capital Buildings; and they shall

elect another member of their Board, the Building [Commissioner], for the erection of the Capitol Building * * *.

"Sec. 10. At the first meeting of said Board, the necessary steps shall be taken, and measures adopted, to procure suitable sites, upon which to erect said Capitol Buildings, in the town of Saint Paul; * * *.

"Sec. 11. All the contracts, and other acts of any Building Commissioner, shall be under the supervision and control of said Board, * * *.

* * * * *

"Sec. 15. Each of the Treasurers elected * * * shall execute a bond * * * in the penal sum of thirty thousand dollars * * * to be approved by the Secretary of the Territory, conditioned for the faithful performance of his duties, and that he will keep and disburse, according to law, all monies received by him as Treasurer, for the fund appropriated by congress for the erection of Public Buildings, the fund for the erection of which, he was elected to receive * * *."

On June 28, 1851, Charles Bazil, then owner of the described premises, and Annie J. Bazil, his wife, executed and delivered a deed thereto to "the Governor and Legislative Assembly of the Territory of Minnesota, in Trust for said Territory." This instrument contained the following provision:

"* * * Whereas the Legislative Assembly of the Territory of Minnesota did by an act entitled an act to provide for the Erection of Public Buildings in the Territory of Minnesota, approved on the eleventh day of February in the year one thousand eight hundred and fifty-one, provided for the election of Commissioners to carry out the objects of such act, and whereas at an election duly held under and by virtue of said act for that purpose on the day therein specified. Louis Roberts, Daniel F. Brawley, Edwin A. C. Hatch, and John McKusick were duly elected such commissioners, and did duly qualify as such commissioners according to the provisions of such act, and did meet at St. Paul in said Territory, on the day specified in said act, for the purpose of locating said Public Buildings, together with his Excellency, the Governor of said Territory, who did according to the provisions of said Act, officiate as the presiding officer, Officer of the

Board, and did duly adjourn until the twenty-fourth day of June, instant when said Board did duly meet, and whereas, said Board did during their Session and on the twenty-seventh day of June, instant, Resolve as follows: *Resolved*: That the location for Capitol Buildings, offered by Charles Bazill, in his communication to the Board this day viz: Block number six (6) in Bazil and Guerins Addition to the Town of St. Paul, be accepted by the Board, and Whereas, said Charles Bazil is seized and possessed of the premises hereinafter described, being the premises designated in said Resolution, the said parties of the first part, for and in consideration of the benefits accruing to them in consequence of said Location, and of the sum of One Dollar to them in hand paid by the said parties of the second part, the receipt whereof is hereby acknowledged, have given, granted, bargained, sold, remised, released, aliened and confirmed unto the said party * * * of the second part, and by these presents do give, grant, bargain, sell, remise, release, alien and confirm unto the said party of the second part, all the following piece or parcel of land, situate, lying and being in the County of Ramsey and Territory of Minnesota, and known and described as follows:

"Block numbered six (6) in Bazil & Guerins Addition to the Town of St. Paul, as will appear by the plat thereof, on file in the Register's Office of Ramsey County, Together with all and singular the hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversion and reversions, remainder and remainders, and the issues and profits thereof, and all the Estate, Right, Title, Interest, Claim and demand whatsoever, of the said parties of the first part, either in law or Equity of and to the above bargained and described premises, with the hereditaments and appurtenances.

"To have and to hold the said premises above described and bargained with the appurtenances unto the said party of the second part, forever. And the said parties of the first part, for themselves and their heirs, executors and administrators do covenant, grant, bargain and agree to and with the said party of the second part, that at the time of the ensealing and delivery of these presents, they are well seized of the premises above conveyed, as of good, sure, perfect, absolute and indefeasible estate, of inheritance in

the land in fee simple, and have good right, full power and lawful authority to grant, bargain, sell and convey the same, in manner and form aforesaid, and that the same is free and clear of all former and other grants, bargains and sales, liens, judgments, taxes and assessments and incumbrances of whatsoever kind and nature, and the above bargained premises, in the quiet and peaceable possession of the said party of the second part, against all and every person, or persons, lawfully claiming or to claim the whole or any part thereof, will forever Warrant and forever Defend."

On June 27, 1851, the day previous, the Board of Commissioners of Public Buildings had received a communication from Charles Bazil now in the records of the secretary of state for the State of Minnesota[1] contained in the archives of the Minnesota Historical Society. The communication is as follows:

"Proposition

"Cha[rles] Bazil

"June 27th 1851.

"The undersigned proposes to donate the following described property for the erection of the Capitol Building in the town of St. Paul To Wit Block No Six (6) in the addition of Bazil and Guerins to St Paul

"June 27th 1851

"Witness

Wm H Randall Secy

his

"Cha x Bazil

mark"

At a meeting of the Board of Commissioners of Public Buildings on Friday, June 27, 1851, the following resolutions were adopted (Council Journal, Minn. Territory, 1852, p. 211):

"Resolved, That the Board do now proceed to re-locate the Capitol Building.

"Adopted.

* * * * *

"Resolved, That the advertisement handed in by the Secretary, be

---

[1] 7 Dunnell, Dig. (3 ed.) §§ 3452, 3454, 3456.

adopted by this Board, and he be instructed to advertise in the papers printed in St. Paul, to wit, as follows:

"Carried.

\* \* \* \* \*

"PUBLIC BUILDINGS OF MINNESOTA TERRITORY.

" 'The board have this day adopted plans for the erection of a Capitol building in St. Paul, and also for the erection of a Territorial Prison in Stillwater, both of which are now open for the inspection of the public, at the office of the undersigned in St. Paul. Sealed proposals will be received at said office till 10 o'clock on Monday, the 14th day of July.

" '1st. For the erection and completion of the Capitol building entire, \* \* \*.

" '2nd. For the completion of the exterior of the Capitol building according to the plan, \* \* \*.'

\* \* \* \* \*

"On motion of Louis Roberts,

"Resolved, That the location for the Capitol, offered by Charles Bazille, in his communication, to wit: Block No. 6, in Bazille and Guerin's addition to St. Paul, be accepted by this board.

"Carried."

At a meeting of the board on June 28, 1851, the following resolution was adopted (Council Journal, Minn. Territory, 1852, p. 213):

"On motion of J. McKusick,

"Resolved, That the report of the Attorney in regard to the title of the land offered by Charles Bazille be accepted by the Board, and that he be authorized to receive the deeds and hand them over to the Secretary.

"Carried unanimously."

In 1854, subsequent to delivery of the deed above described, a capitol building for the Territory of Minnesota was erected on the premises conveyed therein. After Minnesota was admitted to statehood the latter structure continued in use as the State Capitol until 1881 when it was destroyed by fire. Thereafter, a new capitol building

was erected on the premises which continued in use as the State Capitol until 1905 when the present capitol was erected on a new site some distance from the premises here involved. Thereafter, the former capitol structure continued in use as a state office building until 1933-1934, at which time it was demolished. For a number of years thereafter the state used the premises upon which it stood for a parking lot for state employees. In August 1958 it leased the land to private parties for parking lot purposes and on July 8, 1960, conveyed the land to the city of St. Paul by quitclaim deed recorded in Book 1693, County Records, page 642, in the office of the register of deeds for Ramsey County.

In 1938 some of the heirs of Charles and Annie J. Bazil instituted action to register title to the land in their names on the ground that such land had reverted to them under the terms of the original conveyance. They subsequently dismissed these proceedings, but opposed the present action for registration on the same ground. Therein they presented an affidavit of William Pitt Murray who had prepared and witnessed the conveyance from the Bazils to the governor and legislative assembly, as above described. This affidavit, dated April 13, 1909, set forth the following:

"* * * I was well acquainted with the late Charles Bazille and Anna J., his wife, and acted as their attorney for many years, and acted for them at the time of the donation of Block Six (6) in Bazille & Guerin's Addition to St. Paul by said Bazille and wife to the Territory of Minnesota, and am familiar with all of the facts and transactions concerning the same; that owing to the small appropriation by Congress for the purchase of a site and the erection of a Capitol Building, the Commissioners appointed for that purpose * * * requested tenders of a site as a gift. * * * The Commissioners, after examining several locations, became satisfied that Block Six (6) of Bazille & Guerin's Addition to St. Paul was the most desirable location of any * * *. Charles Bazille, the owner, was interviewed and solicited to make a tender of the same for a Capitol site, and notwithstanding the fact that it was the most valuable land he owned he consented and made a tender in writing in which it was distinctly stated

that it was upon the express condition that when ever the premises were abandoned or ceased to be used as a Capitol the property should revert to him or to his heirs and assigns. One of the reasons why he was so strenuous in regard to reversion was that there had been much ill feeling and bitterness about the location of the Capitol in St. Paul; that he or no one else knew but at the next session of the Legislative Assembly the Capitol might be removed. The Commission accepted the tender without a moment's hesitation (June 27th 1851). The title was approved and a deed drafted by myself for Mr. Bazille, as his attorney, which was properly executed by said Bazille and wife, which deed contains the reversion clause. When the deed was presented to the Commission the attorney, Alexander Wilkin, representing the Commission, doubted the propriety of accepting the deed with the reversion clause, as he was afraid the government would not approve of it, or consent to the expenditure of the appropriation in the erection of a building on property containing such a proviso. It was suggested to said Bazille that if he would submit another tender, and in such tender recite the reversion clause in full, which was contained in the deed, and that it would have the same effect as [if] it were recited in the deed, which was consented to. He therefor in accordance with such suggestion made his proposition in writing, fully setting out the reversion clause contained in the deed and presented the same to the Board, which was duly accepted, and upon being assured by Governor Ramsey and the entire Commission that the proposition in writing would have the same effect as if it were contained in the deed he delivered over the present deed, upon which the State now bases its title. Said Bazille in the early 70's, a few years prior to his death, filed his claim and gave notice of his intention to reclaim the property at any time the State should abandon or remove therefrom."

On appeal it is defendants' contention that the trial court's findings are not justified by the evidence which they claim would compel a finding in their favor.

■ It is clear that the trial court was correct in its determination herein. There is nothing in the public records or documents of the Territory of Minnesota which would support the statements made in

the affidavit of William Pitt Murray, or in the evidence submitted, to the effect that there had been a previous communication from Charles Bazil wherein the premises were tendered to the Territory on condition that they would revert to him if their use for a capitol structure was ever abandoned; or that a previous deed from the Bazils with such a clause therein had been submitted to the Board of Commissioners of Public Buildings. The minutes of the meetings of such board, all documents of public record, and the express terms of the deed actually delivered by the Bazils establish beyond doubt that the property was conveyed to the Territory in fee simple without restrictions or conditions of any kind, except those included in the territorial enactment of February 7, 1851, that a capitol structure was to be erected on the property conveyed.

The deed's recital of the resolution of the Board of Commissioners of Public Buildings adopted at its meeting of June 27, 1851, including its reference to the offer of Charles Bazil "in his communication" definitely links the latter's conveyance of his property to his "proposition" in his written offer of June 27, 1851, which contained no restrictions or conditions of any kind except that the property be used "for the erection of the Capitol Building." This is the only communication of any kind received from him which the records of the Board of Commissioners discloses.

The provision in the deed to the effect that "the Legislative Assembly of the Territory of Minnesota did by an act entitled an act to provide for the Erection of Public Buildings in the Territory of Minnesota, approved on the seventh day of February in the year one thousand eight hundred and fifty one provided for the Election of Commissioners"; and the subsequent recital therein of the election of commissioners to carry out the objectives of such act, adequately explain Bazil's purpose in conveying the property "in Trust" to the grantees named therein. Obviously, this was intended to make certain that the requirements of the territorial enactment referred to would be fully complied with by the governor and the legislative assembly of the Territory of Minnesota to whom the property was conveyed "in Trust" for said Territory. The subsequent erection of the

capitol structure on the premises conveyed definitely establishes that such requirements were fully met by the trustees so that, the objectives and purposes of the trust having been accomplished, the trust terminated and title to the property became vested in the Territory in fee simple, unrestricted by any conditions or reversionary interests. Zuckman v. Freiermuth, 222 Minn. 172, 23 N. W. (2d) 541; 54 Am. Jur., Trusts, §§ 85, 98.

■ Defendants' claim is that under the evidence submitted by them they have established that the conveyance made by the Bazils on June 28, 1851, was made "in trust" and that the reference therein to the territorial legislative enactment of February 7, 1851, and the resolution of the Board of Commissioners of Public Buildings, when considered with the affidavit of William Pitt Murray, requires construction of such deed so as to create therein a reversionary right in the Bazils as above described. Reduced to more simple terms, it would seem that defendants seek to vary the terms of the deed, on the ground that certain documents which were not submitted in evidence nor shown to have been lost or destroyed, and for which there was no showing of a diligent search, conclusively established the reversionary provisions described. Their only support for this claim is the affidavit of William Pitt Murray made almost 58 years after the transaction.

As indicated above, a reference to the territorial enactment of February 7, 1851, the minutes of the Board of Commissioners of Public Buildings, and the documents and deed described definitely removes any possible ambiguity from the deed. None of such records or documents disclose an intent on the part of Charles Bazil that a reversionary right in the property was to be retained by him. Moreover, numerous evidentiary rules nullify defendants' claim as above set forth. It is well established that as a general rule records required to be kept by public officials cannot be contradicted, varied, or supplemented by parol evidence, 7 Dunnell, Dig. (3 ed.) § 3389; that parol evidence is inadmissible to prove that a written instrument was executed with the understanding it was not to be binding according to its terms, Id. § 3382; that the terms of a deed cannot be contradicted, altered, added to, or varied by parol evidence or by evidence of a prior

oral agreement, Id. § 3368; that a party seeking to introduce secondary evidence as to the provisions of a lost instrument must prove that a diligent but unsuccessful search has been made for it, Id. § 3274; and that where the former existence of a deed is denied, proof of its former existence and proper execution must be clear and convincing, Id. § 3275.

The application of any of these elementary rules would justify the trial court's determination here that the evidence submitted by defendants was inadequate to support their claims.

Judgment is affirmed.