In re the Marriage of Kelly
**DANIELSON, petitioner,
Appellant,**

v.

**Shane DANIELSON, Respondent.**

**No. A05–2569.**

Court of Appeals of Minnesota.

Sept. 12, 2006.

Cheryl M. Prince, Gabriel D. Johnson, Hanft Fride, P.A., Duluth, MN, for appellant.

Timothy A. Costley, Harbors, MN, for respondent.

Considered and decided by WILLIS, Presiding Judge; DIETZEN, Judge; and ROSS, Judge.

## OPINION

DIETZEN, Judge.

On appeal from the judgment dissolving the parties' marriage, appellant Kelly Danielson challenges the district court's property division. Because the district court erroneously admitted and considered evidence beyond the language of an unambiguous deed to alter its terms, we reverse and remand.

## FACTS

Appellant and respondent Shane Danielson began living together in 1993 on respondent's family farm. In 1994, respondent and his brother, Mark Danielson, each inherited undivided one-half interests in the farmstead from their parents' estates. In 1996, appellant and respondent decided to begin an ostrich-farming business on the farmstead but needed a loan to capitalize the venture.

The parties found a lender that would loan the money based on appellant's good credit history. But to approve the loan, the lender required that appellant have an equity interest in the farmstead. Respondent and Mark Danielson, as grantors, then executed a quitclaim deed in the office of the attorney for the closing company that closed the loan for the lender. The quitclaim deed conveyed the farmstead to appellant and respondent as joint tenants. Mark Danielson was not a grantee on the deed. Thereafter, the parties closed on the financing loan.

Appellant and respondent married in 1998, but in 2004, appellant petitioned for dissolution. A bench trial was held in May 2005 to resolve issues arising from the dissolution. At trial, Mark Danielson testified that the parties asked him to sign a quitclaim deed so that they could obtain financing. He agreed to do so but believed that he would retain his ownership interest in the farmstead and that the conveyance was not intended as a gift to appellant. Respondent testified that the deed was executed for financing purposes and that he and his brother intended to remain owners of the property. Appellant objected to this "extraneous" testimony as prohibited by the statute of frauds. The district court overruled the objection but permitted posttrial briefing on the matter.

The district court entered its judgment in August 2005. It found that despite the quitclaim deed, Mark Danielson retained a one-half ownership interest in the farmstead, which the parties "hold and have held ... in trust" for him. The court determined that respondent's one-half interest in the farmstead was marital property valued at $200,000. It found that the equity in that portion was $120,000, which it divided equally between appellant and respondent. The court also awarded the farmstead to respondent. Appellant now

challenges the admission of evidence of the parties' intent regarding the quitclaim deed and, alternatively, challenges what she alleges is the district court's imposition of a constructive trust on half of the farmstead in Mark Danielson's favor, and the associated findings of fact and conclusions of law.

## ISSUES

1. Did the district court erroneously admit and consider parol evidence to alter the terms of the deed?

2. Did the district court erroneously exercise personal jurisdiction over someone not a party to the dissolution and erroneously adjudicate the property interests of that nonparty?

## ANALYSIS

### I.

▬ Appellant argues that the district court erred by admitting and considering parol evidence to vary the terms of the quitclaim deed.[1] The parol-evidence rule is not a rule of evidence, but a substantive rule of contract interpretation. *Anchor Cas. Co. v. Bird Island Produce, Inc.*, 249 Minn. 137, 145, 82 N.W.2d 48, 54 (1957); *Karger v. Wangerin*, 230 Minn. 110, 114–15, 40 N.W.2d 846, 849 (1950). It

> prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements, or prior written agreements, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing. Accordingly, when parties reduce their agreement to writing, parol evidence is ordinarily inadmissible

to vary, contradict, or alter the written agreement.

*Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 312 (Minn.2003) (internal quotation marks and citations omitted). Despite being primarily a rule of contract interpretation, the rule's prohibition on the use of extrinsic evidence to explain the meaning of a document's language applies to deeds. *See La Cook Farm Land Co. v. N. Lumber Co.*, 159 Minn. 523, 527, 200 N.W. 801, 802 (1924) (stating that the rules for construing contracts apply to deeds); *Mollico v. Mollico*, 628 N.W.2d 637, 640–41 (Minn. App.2001) (applying the parol evidence rule to a deed). Thus, only if a deed is ambiguous can evidence other than its language be considered to determine its meaning. *See City of St. Paul v. Dahlby (In re City of St. Paul)*, 266 Minn. 304, 314, 123 N.W.2d 586, 592 (1963) (stating "the terms of [an unambiguous] deed cannot be contradicted, altered, added to, or varied by parol evidence"); *Mollico*, 628 N.W.2d at 640–41 (stating if a deed is ambiguous, courts can consider parol evidence). A deed is ambiguous if, "judged by its language alone and without resort to extrinsic evidence, it is reasonably susceptible to more than one meaning." *Id.* at 641. And whether a deed is ambiguous is also a question of law subject to de novo review. *Id.*

▬ Here, the quitclaim deed states that Mark Danielson and respondent "hereby convey(s) and quitclaim(s)" the farmstead to appellant and respondent, and notes that "total consideration for the *transfer* of this property is $500.00 or less." (Emphasis added.) The quitclaim

---

1. For purposes of this appeal, we assume that the question of parol evidence is properly before this court by virtue of appellant's assertion to the district court that it should not have admitted "extraneous" evidence regarding the quitclaim deed. *Cf. Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (stating that appellate courts generally address only issues presented to and considered by the district court).

deed does not name Mark Danielson as a grantee, and its plain language does not indicate that the transfer was either limited or reserved; and on its face, it is a complete transfer of all interests of respondent and Mark Danielson as grantors to appellant and respondent as grantees. *See* Minn.Stat. § 507.06 (2004) (providing that a quitclaim deed is "sufficient to pass all the estate which the grantor could convey by a deed of bargain and sale"); *Caughie v. Brown*, 88 Minn. 469, 473, 93 N.W. 656, 657 (1903) (noting that a quitclaim deed "passes such rights and interests as the grantor possesses at the time [of the conveyance]"); *Everest v. Ferris*, 16 Minn. 26, 16 Gil. 14 (1870) (stating that "a quitclaim deed, in common form . . ., passes only the estate which the grantor could *lawfully* convey"); *see also Black's Law Dictionary* 424 (7th ed.1999) (describing a quitclaim deed as a "deed that conveys a grantor's complete interest or claim in certain real property"). Because the language of the deed is unambiguous, the district court erred as a matter of law by admitting and considering evidence to determine the meaning of the deed.

### II.

■ Appellant also argues that the district court's "imposition" of what appellant characterizes as "a constructive trust" in favor of the nonparty Danielson "was improper." A constructive trust is a "judicially created equitable remedy imposed to prevent unjust enrichment of a person holding property under a duty to convey it or use it for a specific purpose." *Wright v. Wright*, 311 N.W.2d 484, 485 (Minn.1981). A constructive trust does not arise from an intent to create one but is imposed by a court as a remedy. *Thompson v. Nesheim*, 280 Minn. 407, 416, 159 N.W.2d 910, 917 (1968).

■ The district court found that the "parties hold and have held an undivided 1/2 interest in the property in trust for Mark Danielson" and that Danielson retained an equitable ownership interest in the farm. By ruling that Mark Danielson retained an interest in the property, the district court exercised jurisdiction over a nonparty to the dissolution (Mark Danielson) and functionally awarded to that nonparty an interest in property that, on its face, was marital property. But in a dissolution proceeding, a district court lacks personal jurisdiction over a nonparty and cannot adjudicate a nonparty's property rights. *Sammons v. Sammons*, 642 N.W.2d 450, 457 (Minn.App.2002); *see also Fraser v. Fraser*, 642 N.W.2d 34, 38 (Minn. App.2002) (noting that Minn.Stat. § 518.58, which provides for the division of marital property, "does not authorize the district court to adjudicate the interests of third parties"); *cf. Melamed v. Melamed*, 286 N.W.2d 716, 718 (Minn.1979) (holding that children may not be awarded a property interest in a dissolution action). Although Mark Danielson was a party to the quitclaim deed, he was not a party to this dissolution proceeding. Therefore, the dissolution was an improper forum for resolving disputes about the transfer of the farmstead or to otherwise adjudicate Mark Danielson's interest in the farmstead. Because Mark Danielson's interest, if any, in the farmstead could not be determined in a proceeding to which he was not a party, the marital interest in the farmstead was unknown, and the extent to which the farmstead is part of the parties' marital estate will depend on the resolution of the ancillary farmstead-transfer dispute. And that dispute, if it is to be resolved by litigation, must be resolved in an action in which Mark Danielson is a party.

■ When the parties to a dissolution proceeding seek division of a marital asset

in which a nonparty may have an interest and the existence or extent of that nonparty's interest is disputed, the district court may initially exclude the asset from the dissolution judgment's property division and, after resolution of any third-party disputes bearing on the various interests in the asset, later divide the marital portion of the asset as "omitted property." *See Neubauer v. Neubauer,* 433 N.W.2d 456, 461 n. 1 (Minn.App.1988) (stating that pension benefits omitted from a property division in an otherwise final dissolution judgment could later be divided as "omitted property"), *review denied* (Minn. Mar. 17, 1989). Alternatively, the district court may award each party a percentage interest in whatever may later be determined to be the marital interest in the asset. *Cf. Taylor v. Taylor,* 329 N.W.2d 795, 798–99 (Minn.1983) (discussing methods of dividing pension interests, including the "fixed percentage" method of dividing pension interests, which awards each party a specific proportion of what ultimately turns out to be the marital portion of the pension being divided). A third alternative is for the district court to include the asset in the dissolution judgment's property division, recognizing that if a nonparty is later determined to have an interest in the asset, the dissolution judgment may be reopened and adjusted under Minn.Stat. § 518.145, subd. 2 (2004). But whatever method a district court selects for addressing the division of an asset in which a nonparty to the dissolution may have an interest, the district court is required to make sufficient findings of fact and conclusions of law to explain its decision.

## DECISION

Because the quitclaim deed was unambiguous, the district court erred both by admitting and considering parol evidence to determine the meaning of the deed. The district court also erroneously exer-

cised personal jurisdiction over a nonparty and erroneously adjudicated that nonparty's property interest. We therefore reverse and remand for reconsideration of the marital interest in the farmstead in a manner consistent with this opinion. On remand, the district court may, in its discretion, reopen the record.

**Reversed and remanded.**