*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-1671**

In re the Marriage of:
Donald Floyd Deeble, Jr., petitioner,
Appellant,

vs.

Hayley Elizabeth Espelien,
Respondent.

**Filed December 4, 2023**
**Affirmed in part, reversed in part, and remanded**
**Slieter, Judge**

Hennepin County District Court
File No. 27-FA-21-211

Roselyn J. Nordaune, Nordaune & Friesen, PLLC, Wayzata, Minnesota (for appellant)

Hayley Espelien, Minneapolis, Minnesota (*pro se* respondent)

Considered and decided by Gaïtas, Presiding Judge; Slieter, Judge; and Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**SLIETER**, Judge

In this marital-dissolution appeal, appellant challenges the district court's (1) classification of property in Meeker County as 49% marital; (2) determination that the Minnehaha property was respondent's nonmarital property due to a premarital gift from appellant; and (3) valuation of respondent's personal property.

Because the district court's findings are insufficient to allow for meaningful review as to how it determined the marital and nonmarital share of the Meeker County property, we reverse and remand on that issue. Because we defer to the district court's credibility findings, we affirm its determination that the Minnehaha property was acquired and improved by husband as a premarital gift to wife. However, because the Minnehaha property is owned by a nonparty entity, we reverse the distribution of that house in the district court's judgment. And we affirm the district court's valuation of respondent's personal property because the record supports it. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

**FACTS**

Appellant Donald Floyd Deeble Jr. and respondent Hayley Elizabeth Espelien married on May 30, 2020. On January 11, 2021, husband commenced this marriage-dissolution proceeding. Following a two-day trial in July 2022, the district court entered judgment dissolving the marriage in October 2022. The district court found the facts recited below.

*Meeker County Property*

In July 2014, husband purchased real estate, which included a house, in Meeker County pursuant to a contract for deed for $128,000. The contract for deed required that he make a $2,000 down payment and 120 monthly installment payments of $1,367.43, which included principal and interest. Husband paid 70 monthly installments prior to their marriage. Seven monthly installments were paid during their marriage until the house was destroyed by a fire in December 2020.

2

Husband maintained property insurance since the inception of the contract for deed. The insurer determined that the fire destroyed personal property and caused a total loss of the dwelling. The insurer approved a $265,866 payment for the lost dwelling and personal property. The district court found that, of the loss payout, the insurer paid $53,218.81 to the seller to satisfy the outstanding balance on the contract for deed and the remaining balance of $212,000[1] was paid to husband.

After calculating the contract for deed payments made during their marriage and accounting for the contract payoff via the insurance proceeds, the district court determined there exists a 49% marital interest in the Meeker County property. It also applied a 49% marital interest to the remaining insurance proceeds of $212,000.

**Minnehaha Property**

Prior to their marriage, husband found a house for wife and her children. Husband arranged for its purchase by wife's business entity, In Depth LLC, pursuant to a contract for deed. Husband facilitated the purchase by providing a $20,000 down payment. He also spent money and time improving the house.

Determining that husband's financial expenditures toward the purchase and his personal efforts to improve the house were a premarital gift to wife, the district court concluded that the Minnehaha property was wife's nonmarital property.

---

[1] This amount appears to be a mathematical error, as the district court's findings suggest a remaining balance of $212,647.19. However, husband does not raise this as an issue, and we are generally unconcerned with *de minimis* discrepancies in math. *Risk ex rel. Miller v. Stark*, 787 N.W.2d 690, 694 n.1 (Minn. App. 2010) (declining relief for a *de minimis* error in valuation of land).

*Personal Property*

The parties agreed that wife had personal property in the Meeker County home which was destroyed in the fire, including a massage table and some of her father's belongings. The district court awarded her $3,000 for the value of this property.

Husband appeals.[2]

**DECISION**

**I.    The district court's findings regarding the marital and nonmarital share of real property are insufficient to permit meaningful appellate review.**

Upon dissolution of marriage, a district court "shall make a just and equitable division" of the parties' marital property. Minn. Stat. § 518.58, subd. 1 (2022). The district court has "broad discretion" in evaluating and dividing property and debts in a marital dissolution. *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002). In exercising that discretion, district courts are not required to make detailed findings. *See Vinnes v. Vinnes*, 384 N.W.2d 589, 592 (Minn. App. 1986). But its findings must reflect that it considered "all relevant factors." Minn. Stat. § 518.58, subd. 1. And they must be sufficient "to allow appellate review." *Vinnes*, 384 N.W.2d at 592; *see also Dick v. Dick*, 438 N.W.2d 435, 437 (Minn. App. 1989) (stating that statute requires "findings which indicate the rationale of the [district] court in making its award"). This court "will affirm the [district] court's division if it had an acceptable basis in fact and principle even though we might have taken a different approach." *Antone*, 645 N.W.2d at 100.

---

[2] Wife did not file a brief in this appeal. This matter therefore proceeds pursuant to Minn. R. Civ. App. P. 142.03, which provides that if a respondent does not file a brief, the case shall be determined on the merits.

***The Meeker County Property***

Husband challenges the district court's marital interest determination in the Meeker County property. The district court found that "[h]usband had a non-marital interest in the Meeker property by way of purchasing it prior to the marriage and making payments on it prior to the marriage." The "payments prior to the marriage total[ed] $97,720.10." Finding that the "remaining payments were made during the marriage and with the proceeds from the fire that occurred during the marriage"; it concluded, "[w]hen the $53,218.81 is added to the $9,572.00 monthly payments made during the marriage, there is a marital interest of 49%" in the Meeker County property.

Property can have both marital and nonmarital aspects. *See Schmitz v. Schmitz*, 309 N.W.2d 748, 750 (Minn. 1981). Nonmarital property includes property "acquired before the marriage." Minn. Stat. § 518.003, subd. 3b(b) (2022). For property acquired before marriage, the net equity at the time of marriage is nonmarital property. *Antone*, 645 N.W.2d at 102; *see also Nardini v. Nardini*, 414 N.W.2d 184, 193 n.7 (Minn. 1987) (noting that when determining the extent of the property interest acquired, the relevant amount of a payment does not include interest).

The *Schmitz* formula may be applied to property acquired before the marriage. *Antone*, 645 N.W.2d at 102 ("[i]nasmuch as the real property comprised both marital and nonmarital interests, the interests should be apportioned according to the [*Schmitz*] formula." (quoting *Nardini*, 414 N.W.2d at 193)). For property acquired before the marriage, the formula uses the time of the marriage instead of the time of the purchase. Thus,

> [t]he present value of a [nonmarital interest in property acquired before the marriage] is the proportion the net equity . . . at the time of [the marriage] bore to the value of the property at the time of [the marriage] multiplied by the value of the property at the time of separation. The remainder of equity increase is characterized as marital property . . .

*Id.* (quoting *Brown v. Brown*, 316 N.W.2d 552, 553 (Minn. 1982).

The district court was unable to apply the *Schmitz* formula because the parties submitted no evidence of the value of the Meeker County property at the time of marriage to determine husband's proportion of the net equity. And because there are no findings related to the *Schmitz* formula, we cannot meaningfully review whether, as husband argues, the valuation it arrived at in relation to marital and nonmarital value of the property, is erroneous.

Therefore, we reverse and remand to the district court to determine the property's value at the time of marriage and to apply the *Schmitz* formula to determine the marital and nonmarital interests.

***The Insurance Proceeds***

Husband also challenges the district court's marital interest determination in the insurance proceeds. The district court determined that by, "applying the same logic" used to reach the marital value of the Meeker County property, there exists a 49% marital interest in the insurance proceeds resulting from the house fire.

Nonmarital property includes property "acquired by either spouse before, during, or after the existence of their marriage, which . . . is acquired in exchange for" property that was "acquired before the marriage," Minn. Stat. § 518.003, subd. 3b(b)-(c) (2022).

Husband does not assert that the district court erred by determining that the insurance proceeds involved marital and nonmarital characteristics. Instead, he disputes the district court's calculation that it was 49% marital.

The record indicates that husband maintained and paid for a homeowners insurance policy on the property since its purchase in July 2014. The insurance proceeds were received pursuant to an insurance agreement that husband acquired before the marriage in exchange for property with marital and nonmarital characteristics. *See* Minn. Stat. § 518.003, subd. 3b(c); *Schmitz*, 309 N.W.2d at 750.

The district court indicated that it applied the same reasoning to the insurance proceeds as it did to the valuation of the Meeker County property. We have already concluded that there are insufficient factual findings for meaningful review of that valuation. And, because the insurance payout constitutes property that was acquired in exchange for the destroyed property, we must remand the district court's determination of its marital and nonmarital value for the same reason.

## II. The district court acted within its discretion to consider the acquisition and improvement of the Minnehaha property as a premarital gift to wife from husband, though it erred by distributing ownership of the property owned by a nonparty.

### *Premarital Gift*

Questions of intent to make a gift are questions of fact. *Oehler v. Falstrom*, 142 N.W.2d 581, 585 (Minn. 1966). We defer to the district court's findings on issues of fact unless they are clearly erroneous. *Gill v. Gill*, 919 N.W.2d 297, 301 (Minn. 2018). When reviewing for clear error, we will not disturb the district court's findings of fact if there is

7

reasonable evidence to support them. *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn. 1999).

The existence of a gift must be established by clear and convincing evidence. *Oehler*, 142 N.W.2d at 585. The legal elements necessary to establish the existence of a gift are: (1) delivery, (2) intention to make a gift on the part of the donor, and (3) absolute disposition by the donor of the thing which he intends to give to another. *Id.*

The district court made findings of fact in support of each of the legal elements of delivery, acceptance, and donative intent, and it determined "by clear and convincing evidence that the Minnehaha property was a gift" from husband to wife prior to their marriage.

The district court found credible husband's testimony that:

- The parties "were in a romantic relationship" in 2019, prior to and during the time when the house was purchased.

- Husband began his search for a "better property" for wife because he did not think she lived in a "safe neighborhood."

- Husband identified a house that was close to the schools that wife's children attended; he arranged for purchase of the property in the name of wife's company on a contract for deed; he made the down payment; he put the property in her name and the contract for deed in her control because he loved her; and he remodeled it so that wife and her children could live in it.

The district court found a contrary statement by husband, indicating his sole intent for the Minnehaha property was as an investment property, to be less credible.

The district court found credible wife's testimony that:

- Husband had expressed concerns about her and the children living in North Minneapolis. He told her that the Minnehaha property was a home she could raise her kids in and that it was close to their school.

8

- Wife's understanding of the plan regarding the property was for husband to borrow $20,000 for the down payment and then she would own it, live there, and raise her children there.

- Husband would travel to visit her, but he never moved any of his things into the Minnehaha home. He also never asked for repayment of the money spent on the down payment or improvement and never demanded she pay anything to him, precisely because it was a gift.

Husband claims that the district court erred by finding that his financial effort to acquire and improve the Minnehaha property was a premarital gift to wife. He challenges the district court's determination that he acted with the donative intent necessary for those expenditures to be deemed a gift. We are not persuaded.

The district court made findings regarding husband's donative intent after weighing the relevant testimony. We defer to the district court's credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988). The record supports the district court's determination that husband intended to gift the Minnehaha property to wife. *Rogers*, 603 N.W.2d at 656. Because the record supports the donative intent finding, it is not clearly erroneous. *Gill*, 919 N.W.2d at 301. Therefore, we affirm the district court's determination that husband's financial effort to acquire and improve the Minnehaha property was a premarital gift to wife.

***Distribution of Asset Owned by Nonparty***

If either or both of the parties to a dissolution own an interest in a business, and that business has a separate legal existence from the parties to the dissolution, then the assets of that business are owned by the business itself rather than the owners of any interest in that business. *See, e.g.*, *Blohm v. Kelly*, 765 N.W.2d 147, 153 (Minn. App. 2009) (noting

9

that corporate assets belong to the corporation, not its shareholders); *Baldwin v. Canfield*, 1 N.W. 261, 272 (Minn. 1879) ("Stockholders do not have an 'interest' in the corporate real estate, in the sense in which the word 'interest' is commonly used in that connection, for such real estate is the property of the corporation.").

Thus, while ownership interests in a business, like shares or stock in the corporation, may be divisible in a dissolution proceeding, the underlying assets of the business itself are not divisible unless, among other things, the business is a party to the dissolution. *See Danielson v. Danielson*, 721 N.W.2d 335, 339 (Minn. App. 2006) (stating that, "in a dissolution proceeding, a district court lacks personal jurisdiction over a nonparty and cannot adjudicate a nonparty's property rights"); *Sammons v. Sammons*, 642 N.W.2d 450, 457 (Minn. App. 2002) (stating that the "district court may not exercise jurisdiction over a nonparty" and "[lacked] personal jurisdiction to enter a judgment affecting [the property rights of a nonparty]"); *see also Fraser v. Fraser*, 642 N.W.2d 34, 38 (Minn. App. 2002) (noting that Minn. Stat. § 518.58 "does not authorize the district court to adjudicate the interests of third parties").

The record indicates that the Minnehaha property is owned by wife's company, In Depth LLC, rather than by either of the persons that are parties to this dissolution proceeding. Though a party's ownership interest in a corporation is divisible in the dissolution proceeding, that corporation's assets are not. *Danielson*, 721 N.W.2d at 339. Because In Depth LLC is not a party to this proceeding, the district court lacked personal jurisdiction to award its property to wife. *Sammons*, 642 N.W.2d at 457. It is an error for the district court to distribute an asset owned by a nonparty, *Fraser*, 642 N.W.2d at 38, and

10

we, therefore, reverse the district court's judgment distributing the Minnehaha property to wife.

**III.    The district court did not err in its valuation of personal property.**

Husband also contends that the district court erred when it assigned a value of $3,000 to wife's personal property destroyed by the Meeker County house fire.

"Determining the specific value of an asset is a finding of fact," which an appellate court will not "set aside unless clearly erroneous on the record as a whole." *Maurer v. Maurer*, 623 N.W.2d 604, 606 (Minn. 2001) (quotation omitted). An appellate court does not require the district court to be mathematically exact in its valuation of assets, because "it is only necessary that the value arrived at lies within a reasonable range of figures." *Johnson v. Johnson*, 277 N.W.2d 208, 211 (Minn. 1979). Deferring to the district court's credibility determinations, *Sefkow*, 427 N.W.2d at 210, we view the record "in the light most favorable to the [district] court's findings," *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000).

The district court found that wife had personal property in the Meeker County home which was destroyed in the fire, including a massage table and some of her father's belongings, which it valued at $3,000. The record reasonably supports these findings. *Maurer*, 623 N.W.2d at 606. For example, wife testified that the value of this property was "between $11,000 to $15,000." Weighing this testimony, the district court determined "it is reasonable that the property of wife's that was lost in the fire was worth $3,000." We defer to the district court's evaluation of credibility. *Sefkow*, 427 N.W.2d at 210. Therefore, the district court's valuation is not clearly erroneous.

11

We express no opinion upon the resolution of the remanded issues, and we leave to the district court's discretion how it will proceed upon remand. We realize that its resolution of the remanded issues will impact its allocation of the marital share of those assets, including those assets which husband purchased with insurance proceeds, as well as the district court's determination of the equalizer payment. Therefore, these are issues to be considered by the district court upon remand. The district court shall have discretion, upon remand, whether to reopen the record.

**Affirmed in part, reversed in part, and remanded.**