TOM VINT, d.b.a. VINT REALTY COMPANY, v. L. S.
NELSON AND ANOTHER.

127 N. W. (2d) 177.

March 20, 1964—No. 39,083.

*I. L. Swanson,* for appellants.
*Swenson & Grover,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by plaintiff, Tom Vint, doing business as Vint Realty Company, against defendants, L. S. Nelson and Ethel M. Nelson, for real estate broker's commission claimed due on the sale of defendants' property known as the Ashby Motel at Ashby. Plaintiff's claim is based upon a written agreement dated April 1, 1961, signed by defendants, wherein they granted him the exclusive right to sell the motel during the 6-month period to follow, and thereafter until revoked by 30 days' notice in writing.

Without plaintiff's assistance, defendants sold the property about June 20, 1961. Plaintiff's action is based upon the following provisions in the agreement:

"The undersigned owner of the premises hereinafter described hereby irrevocably appoints VINT REALTY COMPANY OF P. O. BOX 662 SIOUX CITY, IA., as agent, and grants to such agent the exclusive right to sell said premises for the price and under the conditions herein stated, or for any less sum or upon other terms and conditions hereafter authorized by the owner, * * * said exclusively agency to remain in effect for the period of Six months from the date hereof and thereafter until revoked by thirty days notice in writing. * * *

* * * * *

"* * * The owner agrees that while this agreement continues in effect, no sale or negotiations for sale or exchange of the property, except through said agent, will be negotiated nor will any other person be given authority to sell or exchange said property and the owner will quote no price or terms more favorable to the buyer than are herein specified, and the owner will promptly report all inquiries or opportunities for sale to the agent and will cooperate in good faith with the agent in disposing of said property."

In a cross-complaint, wherein defendants sought reformation of the contract described, they alleged:

"That the signatures of the defendants * * * were secured to such instrument by reason of fraud, deception and misrepresentations practiced by the plaintiff * * * in that the plaintiff and his * * * representa-

tives * * * represented to the defendants that such contract was to be effective only for a period of not to exceed 30 days, that they had a buyer who would purchase the property within 48 hours and that this contract was only to cover such negotiations during that period of time * * *; * * * that this contract would not affect any sale made by the defendants themselves * * *; * * * that they did not need to read the printed portion of the contract * * * and that there was nothing in the printed portion * * * at variance with the representations made by the plaintiff, * * *.

"That * * * defendants relying upon such representations, which were in truth and fact false, signed such contract * * *."

At the trial defendant L. S. Nelson testified that just prior to his signing of the contract plaintiff had told him that "if I signed the contract for six months, that any time I find that I was not satisfied, I could write a letter and cancel it, and on thirty days they would cancel me out"; that "he [Vint] explained * * * that any time within thirty days, we give them a thirty days' notice, that we could cancel the contract; and I said that would be the only way I'd sign the contract, is to be eligible to get out of it within thirty days' time; notice; he says 'okay, that's the way the dates will be; we give thirty days; we have to have thirty days' notice' "; and that after such representations he had signed the contract without reading it "[b]ecause he [Vint] absolutely said that he took faith in his customers and for us to take faith in him and his word."

Defendant Ethel M. Nelson testified that she had signed the contract without reading it but that she did not understand the contract would be for a 6-month period; that the plaintiff had said "any time we wanted to cancel it, regardless of the contract, a thirty-day written notice was all that he required."

Plaintiff denied the foregoing and testified that he had definitely advised defendants that he would not work on a sale of their property unless he had a 6-month exclusive listing contract; that the contract submitted to and signed by the Nelsons on April 1, 1961, was to such effect; that he had told them that "this contract would definitely run six months, no less, and he [Mr. Nelson] could cancel it in thirty

days before the six months was up; if he didn't, it could run seven months, or thirty days before the contract was up; or giving us thirty days' notice" and added, "It seemed like it was agreeable with him, because he wanted to sell the motel."

After the execution of the contract plaintiff advertised defendants' property for sale in a number of publications and produced a number of prospective buyers whose proposals were submitted to and declined by defendants. On May 8, 1961, Mr. Nelson wrote plaintiff as follows:

"This is to inform you we wish to revoke the listing contract for the Ashby Motel.

"As we agreed this will take effect in thirty days.

"Please send us the contract at this time."

In reply to this, on May 15, 1961, plaintiff wrote defendants as follows:

"Your letter of May 8, 1961 received. I have two parties that are interested in your motel. One party living at Spencer, Iowa, and the other living at Storm Lake, Iowa.

"It may take 3 days before we get up there to look at your motel. We have spent a lot of money on your place so far, so would hate to give up the listing. I am wondering if you are dissatisfied with what we have been trying to do. It takes some time to run down buyers, after we advertise these places for sale. When you listed your place with us, it seemed like you were determined to sell it.

"I expect to be up your way in the very near future, I will stop in and chat with you about the possibilities of cancelling this contract or going on through with a sale."

Thereafter plaintiff continued to work for the sale of the property and submitted at least one additional offer to defendants which they declined. Mr. Nelson testified that in the first part of June 1961 he had advised plaintiff by telephone that "I wanted the contract back, and as far as I'm concerned, it was done," and plaintiff had replied that "I had signed that contract and it was for six months and he was

going to sell that place some way or other, and a lot of statements like that * * *."

About June 20, 1961, defendants entered into the contract for sale of the property to Henry Boerhave of Sheldon, Iowa. The latter testified that he did not know the plaintiff or that plaintiff had the property for sale; that he had had no contact with plaintiff or any of plaintiff's agents at any time; and that during a visit to the area in which the motel was located he had accidentally learned from an oil station attendant that it was for sale.

At the close of the testimony the court charged the jury as follows:

"Defendants admit they signed the listing contract with Vint, and also admit the sale of the motel to Boerhaves for $65,000.00. Defendants claim, however, that Plaintiff represented to them that the printed listing contract provided that they, the Nelsons, could cancel the listing contract upon thirty days' written notice.

"Defendants * * * believed this representation and were thereby induced to sign this contract.

"Plaintiff denies that either he or Christopherson [his employee] ever stated or ever represented that the printed listing contract provided that the Nelsons could cancel the contract upon thirty days' written notice.

\*     \*     \*     \*     \*

"The Court charges you as a matter of law that the only defense of the Nelsons which you may consider is their claim that plaintiff represented that the printed contract provided that the Nelsons could cancel the contract upon thirty days' written notice. * * *

\*     \*     \*     \*     \*

"I wish to impress upon you that if defendants knew that there was no provision in the printed contract itself which provided that they could cancel the contract upon thirty days' written notice, your verdict must be for the plaintiff."

The respective counsel for the litigants at that time indicated that these instructions were satisfactory. The jury returned a verdict in favor of defendants. Subsequently, the court granted plaintiff's motion

for judgment notwithstanding the verdict and ordered entry of judgment for plaintiff for $6,500, based upon 10 percent of the sale price. It further ordered that if the order for judgment notwithstanding verdict were reversed by this court, plaintiff's motion for a new trial would be denied. In a memorandum attached to this order, it stated:

"* * * The only defense submitted to the jury was the claim of defendants that plaintiff represented to them that the printed listing contract contained a provision which allowed them to cancel the listing contract upon thirty days written notice. A careful study of the testimony proves that the defendants never believed the listing contract contained any such provision. The most that can be spelled from defendants' testimony is a claimed contemporaneous parol agreement to vary the terms of the listing contract."

On appeal from the judgment for plaintiff, defendants contend that the verdict should not have been set aside in view of their testimony that prior to the execution of the written agreement, and to induce them to sign it, plaintiff had represented to them that even though it was for a 6-month period, as they knew, they would nevertheless have the right to terminate it during such 6 months by giving him 30 days' written notice to such effect.

■ Defendants' testimony clearly discloses that prior to the execution of the agreement above described they were aware that it was for 6 months' duration and contained no clause which granted them the right to terminate it at any time prior to the expiration of such 6-month period. Thus, Mr. Nelson testified that "if I signed the *contract for six months,* that any time I find that I was not satisfied, I could write a letter and cancel it"; that "I said that would be the only way I'd sign the contract, is to be eligible to get out of it within thirty days' time." (Italics supplied.) Mrs. Nelson testified, "They [plaintiff] said any time we wanted to cancel it, regardless of the contract, a thirty-day written notice was all that he required." But the allegations in defendants' cross-complaint; the conduct of the trial by both litigants; and the instructions to the jury all clearly manifest that defendants' theory of the case, and the basis upon which it was tried and submitted, was

that plaintiff had fraudulently represented to them that a 30-day cancellation clause was included in the written provisions of the agreement and that in reliance upon such representation they had signed it. There being no testimony to support this theory, the trial court had no choice but to set aside the jury's verdict on the basic issue involved. Jeske v. George R. Wolff Holding Co. 250 Minn. 16, 83 N. W. (2d) 729; Peterson v. Minnesota Power & Light Co. 206 Minn. 268, 288 N. W. 588.

■ Defendants' theory on appeal varies from that on which the case was tried and submitted. They presently claim that the verdict finds support in their testimony that the execution of the written agreement had been induced by plaintiff's representation that, while the agreement extended for a 6-month period, they could nevertheless terminate it at any time on 30 days' written notice to such effect; and that having executed it with this understanding, they had the right to terminate it by such 30-day notice, even though they knew that no such provision was contained therein. While it is true that under proper pleadings evidence as to oral promises relating to prior or contemporaneous matters not included within a written agreement fraudulently made to induce its execution may be sufficient to establish the defense of fraud in an action on such agreement, National Equipment Corp. v. Volden, 190 Minn. 596, 252 N. W. 444, 835; Ganley Brothers, Inc. v. Butler Brothers Bldg. Co. 170 Minn. 373, 212 N. W. 602, 56 A. L. R. 1, this rule would not apply where, as here, the testimony offered to establish fraud related to matters known to be covered by the written agreement and to the claim that plaintiff had represented that contractual provisions having reference thereto would not be effective. As stated in 9 Wigmore, Evidence (3 ed.) § 2439:

"It may be added that the term 'fraud' must here be understood in its legitimate narrow sense, *i.e.* a misrepresentation of a *present* or *past fact;* for, although a much looser significance has been occasionally intimated, yet it is obvious that an intent not to perform a promise (*i.e.* a misrepresentation as to a future fact), or a subsequent failure

knowingly to perform an extrinsic agreement not embodied in the writing, cannot in strictness be legally included in the term 'fraud.' "

See, also, In re Application of City of St. Paul to Register Title, 266 Minn. 304, 123 N. W. (2d) 586; Hogan v. Church of St. Anne, 237 Minn. 52, 53 N. W. (2d) 449; Skelton v. Grimm, 156 Minn. 419, 195 N. W. 139; 7 Dunnell, Dig. (3 ed.) §§ 3381, 3382; Partanian v. Flodine, 95 Cal. App. (2d) Supp. 931, 213 P. (2d) 790; Hoff v. Peninsula Drainage Dist. 172 Ore. 630, 143 P. (2d) 471.

It would follow that the trial court's action in setting aside the verdict was proper in all respects.

Affirmed.