# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

Nos. 99-3404 & 99-3520

_____

| | | |
|---|---|---|
| Clifford Crowell; Paul Doherty; Galen Drent; Paul Erlandson; Duwayne Falk; Scott Friesen; Wesley Fuerstenberg; Tim Kamstra; Delbert Klassen; Jon Lussenhop; Lowell Nystrom; Vern Olberding; Fred Portz; Robert Soodsma; Ken Spaeth; James Spangler; Judy Taber; Dale Tauer; Milo Veenstra; Brad Verburg; Roger Weertz; Roger Wipperman, | * * * * * * * * * * * | |
| | * | Appeals from the United States |
| Appellants/Cross-Appellees, | * | District Court for the |
| | * | District of Minnesota. |
| v. | * | |
| | * | |
| Campbell Soup Company, a New Jersey corporation; Herider Farms, Inc., a Texas corporation, | * * * | |
| | * | |
| Appellees/Cross-Appellants. | * | |

_____

Submitted: June 12, 2000
Filed: September 6, 2001 (Corrected 10/1/01)

_____

Before HANSEN and HEANEY, Circuit Judges, and MILLS,[1] District Judge.

_____

HANSEN, Circuit Judge.

When Herider Farms, Inc. (Herider), a wholly-owned subsidiary of Campbell Soup Company (Campbell), decided to terminate its poultry production contracts with the above-named appellant farmers (Growers), the Growers brought suit alleging breach of contract, fraudulent inducement and misrepresentation, breach of the covenant of good faith and fair dealing, violation of Minnesota Statute section 17.92, and various other claims. The district court[2] granted summary judgment in favor of Herider on all of the claims except for the Growers' breach of contract and section 17.92 claims. As to those remaining claims, the district court's evidentiary rulings limited the scope of damages available to the Growers. The district court also denied Herider's claim for attorneys' fees. Stipulated final judgments reserving appellate rights were entered, and both sides appeal challenging various aspects of the district court's rulings. We affirm.

## I. Background

Beginning in 1987 and continuing until the mid-1990s, several Growers in southwest Minnesota and northwest Iowa entered into broiler chicken production contracts with Herider. The arrangement called for the Growers to construct, equip, and operate poultry barns in return for Herider's agreement to regularly place newborn chicks with the Growers. An average barn cost roughly $250,000 to construct and had a 40,000 chick capacity with an approximate 60-day turnaround

_____

[1]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

[2]The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

time for feeding the chicks to processing weight. Each Grower signed a written Growing Agreement and an accompanying Poultry House Financing Addendum, the interpretation of which are in dispute. On May 19, 1997, Herider sent a letter to each of its Growers informing them that Campbell would be shutting down its processing plant in Worthington, Minnesota and that Herider would cease placing flocks of chickens with the Growers.

The Growers' main argument is that Herider breached the terms of the contract by terminating the contracts without cause. The Growers base their wrongful termination claim on allegations that Herider made several precontract oral promises, namely that Herider was committed to placing chicks with the Growers during the useful lives of the barns, that Herider would only terminate the Growing Agreements "for cause," and that Herider promised certain profit projections which never came to fruition. The Growers claim they entered into the now-disputed written contracts based on these alleged promises. Addenda to the contracts provided that the Growers were entitled to "the reasonable cost of financing construction of a poultry house," according to an attached schedule, in the event that Herider elected to terminate the placement of flocks with Growers prior to the placement of 35 flocks (for contracts entered into prior to 1989) or of 40 flocks (for contracts entered into thereafter). (Appellees' Supp. App. at 52.) We refer to such a termination elsewhere in this opinion as a "premature termination."

The district court, ruling on motions in limine, prohibited parol evidence of any precontract oral promises made by Herider because it found that neither the main contracts nor the accompanying addenda were ambiguous as to Herider's right to terminate the contract without cause at any time, provided no flocks were present or scheduled to be present in the barns. The district court, therefore, dismissed the Growers' misrepresentation, fraudulent inducement, and rescission claims by holding, as a matter of law, that the Growers' reliance on the alleged oral promises was unreasonable because any such reliance was completely contradictory to the

3

termination-at-any-time provisions of the written contracts. The district court then granted summary judgment in favor of Herider on the Growers' wrongful termination claims, finding that Herider had the contractual right to terminate the contracts without cause. The district court next denied Herider's motion for summary judgment on the Growers' breach of contract claims for failure to meet its payment obligations under the contract in the event of premature termination and, because the schedules which were to be attached to the addenda never existed, allowed parol evidence for the purpose of determining the meaning of the ambiguous term "reasonable cost of financing the construction of a poultry house." (Appellees' Supp. App. at 52.) The district court then dismissed the Growers' breach of implied covenant of good faith and fair dealing claims on the grounds that termination was allowed under the contract, and therefore, any implied covenant was extinguished upon the permitted termination. Finally, the district court denied Herider's motion for summary judgment on the Growers' statutory claims under section 17.92. Both sides appeal the district court's summary judgment rulings, and as for damages, Herider seeks its attorneys' fees for defending against the Growers' suit, while the Growers argue that the district court erred in limiting their evidence of contract, future profit, and statutory damages.

## II. Analysis

We review de novo a district court's decision to grant summary judgment, viewing the facts in the light most favorable to the nonmoving party, but we review for abuse of discretion a trial court's determination that a claim is ripe for summary judgment. In re TMJ Implants Prods. Liab. Litig., 113 F.3d 1484, 1489, 1492 (8th Cir. 1997). A court generally does not abuse its discretion by granting summary judgment on the record before it if the party opposing summary judgment seeks neither a continuance nor further discovery. Id. at 1490. Neither party requested additional discovery and neither party sought a continuance and, therefore, we find no abuse of discretion by the district court in proceeding to rule on the motions for

4

summary judgment.  We now proceed to address the merits of the various challenges to the district court's decisions raised by the Growers and Herider.

*Breach of Contract*

The Growers argue that Herider breached its contract with the Growers by terminating the contracts without cause.  Herider admits that the contracts were not terminated due to any failure on the Growers' part to perform adequately under the contracts, but argues that it had the right to terminate the placements of flocks with the Growers at any time and for any reason.  The district court found that the written contract expressly and unambiguously gave to Herider the right to terminate flock placements at any time and for any reason, so long as no flocks were presently on the Growers' farm or scheduled to be placed on the farm.  The district court also held that the contract granted to the Growers the right to be reimbursed for the reasonable costs of financing the construction of the poultry buildings if Herder terminated the placement of flocks prior to the placement of 35 or 40 flocks.[3]

The Growing Agreements contain the following relevant language:

D. 2. Future Flocks: Termination: Fee Changes.  That this Agreement shall apply to any flocks that may be placed on GROWER'S premises from time to time at HERIDER'S election. . . . In addition to GROWER'S right to terminate under the preceding sentence, either party may elect to terminate this Agreement by written notice received by the

_____

[3]Once the Growers filed the present lawsuit, Herider refused to make payments for the reasonable cost of financing the construction of the poultry houses on the ground that the Growers' filing of the lawsuit was a material breach of the contract on the part of the Growers.  The district court held that the Growers did not breach the contract by filing the lawsuit--a ruling Herider does not directly challenge in this appeal--and therefore properly found Herider to be in breach of its contractual obligation to reimburse the Growers for their costs of financing the construction of the poultry houses.

other party *at any time* that no flock is placed or scheduled to be placed with GROWER.

D. 3. Default: Remedies.  That in the event any of the following occurs: (i) GROWER for any reason removes or attempts to remove from GROWER'S premises any of HERIDER'S birds, feed, medicines, or other supplies; or (ii) GROWER in any manner encumbers, sells, or assigns any of HERIDER'S birds, feed, medicines, or other supplies, or attempts or permits the same; or (iii) HERIDER determines that GROWER is not following the HERIDER Management Guide or is otherwise improperly or neglectfully feeding, watering, or otherwise caring for said birds; then in any such event HERIDER may at its option *immediately terminate* this Agreement . . . .  Upon termination of this Agreement for breach as provided herein, GROWER will not be entitled to any fee.

(Clifford Crowell Growing Agreement, Appellees' Supp. App. at 49 (emphasis added).)  The contractual right contained in D.2. to terminate at any time there is no flock in the barn is restated with even more clarity in the Poultry House Financing Addendum signed by each Grower.

GROWER acknowledges that HERIDER may terminate the placement of flocks with GROWER at any time when no flock is currently placed or scheduled to be placed, as provided in Section D, paragraph 2, of the foregoing Agreement.  HERIDER nevertheless agrees that, *if it elects to terminate placements prior to* having placed a total of [35 or 40] flocks with GROWER (at a rate of approximately 5 flocks per year), HERIDER will continue to make payments to GROWER at 10-week intervals under the attached Schedule, which payments are intended to reimburse GROWER for the reasonable cost of financing the construction of a poultry house.  GROWER acknowledges that GROWER will have no other claim against HERIDER for damages of any kind as a result of such permitted termination prior to the placement of the number of flocks stated in the preceding sentence.

6

(Clifford Crowell Poultry House Financing Addendum, Appellees' Supp. App. at 52 (emphasis added).)

Thus, under Section D.3. of the Growing Agreements, Herider has the right, while flocks are in the Growers' barns, to immediately terminate the contracts without any penalty to Herider based on any breach by a Grower of the specified terms of the contract. Under Section D.2. and the Financing Addendum, Herider has the right to terminate the contracts at any time and for any reason if no flocks are present in the poultry buildings, subject only to the obligation of paying the reasonable costs of financing the construction of the poultry houses if termination occurs prior to the placement of either 35 or 40 flocks. We therefore find no error in the district court's granting of summary judgment in favor of Herider for any damages beyond those which may be due the Growers for the reasonable costs of financing construction of the poultry houses.

*Fraud, Misrepresentation, and Rescission*

The Growers argue that the district court erred by failing to submit to a jury their fraud, misrepresentation, and rescission claims, which were based on three allegedly false precontract promises made by Herider. The district court found that the alleged promises were completely contradicted by the terms of the written contract, thereby rendering any reliance by the Growers on those promises unreasonable. See Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 938 F.2d 870, 876 (8th Cir. 1991) (interpreting Minnesota law as follows: "When a promise is not in plain contradiction of a contract, or if contradictory, when it is accompanied by misrepresentations of other material facts in addition to the contradictory intent[,] the question of reliance is for the trier of fact.") (citations omitted). Based on Minnesota's parol evidence rules, the district court therefore prohibited the introduction of any evidence of the alleged oral promises and granted summary judgment in favor of Herider on the Growers' claims. See Hruska v. Chandler

<u>Assoc., Inc.</u>, 372 N.W.2d 709, 713 (Minn. 1985) ("parol evidence is ordinarily inadmissible to vary, contradict, or alter the written agreement").

We agree with the district court that any reliance by the Growers on the three alleged oral promises made by Herider was unreasonable as a matter of law because each of the alleged oral promises plainly contradicted the terms of the written contract. We also note that besides contradicting the substance of the written contract, the oral promises also plainly contradict Section D.7. of the contract, which states that "this Agreement constitutes the entire agreement between the parties relating to the subject matter hereof and no oral agreement shall alter or add to any part thereof." (Clifford Crowell Growing Agreement, Appellees' Supp. App. at 49.)

First, the alleged overriding oral promise to terminate the Growers only "for cause" plainly contradicts the written contract provisions granting Herider the right to terminate the placement of flocks essentially at any time when flocks are not in the barns. Section D.3. does permit immediate termination only for cause and then explicitly lists the grounds justifying such an immediate termination. Section D.2., however, does not place any limitations on Herider's right to terminate the contract when there are not any flocks present in the barns. In order to accept the Growers' interpretation of the termination provisions of the contract, a court or jury would have to read into Section D.2. not only the words "for cause only" but would have to determine the grounds constituting "cause." The Growers' proposed interpretation would also lead to the odd result that Herider could immediately terminate a contract for cause *without* incurring any obligation to pay the reasonable cost of financing the construction when flocks were actually in the barns according to Section D.3., but when no flocks were in the barns, Herider could likewise only terminate the contracts for cause and still would be subject to paying the reasonable cost of financing the construction of the barn. We also do not agree with the Growers that the term "permitted termination" in the financing addendum is ambiguous. We agree with the district court that "permitted termination" specifically refers to the between-flock

8

termination authorized in Section D.2. and as explained in the financing addendum, which we have already held permits termination without cause. We therefore agree with the district court that the clear language of the contract permits termination at any time and for any reason, provided no flocks are in the Growers' barns or scheduled to be placed therein, and that any reliance on an alleged, oral, overriding, for-cause-only termination promise is unreasonable because it is plainly contradicted by the written contracts. See Vint v. Nelson, 127 N.W.2d 177, 181 (Minn. 1964) (affirming dismissal of fraudulent misrepresentation claim on grounds that oral promise related to matters known to be covered in the written contract and oral promise contradicted the written contract terms); Dorso Trailer Sales, Inc. v. Am. Body and Trailer, Inc., 372 N.W.2d 412, 415 (Minn. Ct. App. 1985) (holding that a contract with its only restriction on termination being a 90-day notice requirement, and otherwise silent as to termination for cause or at will, is unambiguously terminable at will under Minnesota law); cf. Cederstrand v. Lutheran Bhd., 117 N.W.2d 213, 221 (Minn. 1962) (explaining that a hiring contract for an indefinite term is in reality terminable at will, and thus the contract may be terminated at any time *and* for any reason).

Second, we likewise find Herider's alleged promise of a long-term commitment to continue placing flocks with the Growers beyond 35 or 40 flocks to be in plain contradiction of the written contract provisions granting to Herider the express right to terminate the contracts *prior to* the placement of 35 or 40 flocks. We therefore agree with the district court that any reliance by the Growers on this alleged promise would also be unreasonable as a matter of law.

Finally, Herider's alleged revenue misrepresentations over the course of the useful lives of the poultry buildings are not enough to defeat the district court's grant of summary judgment in favor of Herider on the Growers' misrepresentation, fraud, and rescission claims. To begin with, any promise of a certain amount of profits per year for the useful life of the buildings beyond the first seven or eight years (35 to 40

9

flocks) plainly contradicts the termination-at-any-time provisions of the contract and the limited nature (35 to 40 flocks) of the guarantee to reimburse the reasonable costs of financing construction of the buildings. In addition, any revenue predictions for the first seven or eight years of the contract are plainly contradicted by the fact that each Grower signed a payment schedule specifying the price per pound it would be paid for the finished chickens. That price, generally ranging from 4 to 4.2 cents per pound, was known by the Growers at the time the contracts were signed. Thus, the Growers were well aware of the likely revenues under the contract, and any other alleged oral or written misrepresentations as to revenues are plainly contradicted by the terms of the written contract.

The Growers are thus left with their claims of alleged misrepresentations of expenses and lost profits for the first seven or eight years of the contracts. Neither is sufficient, however, to prevent summary judgment on the Growers' fraud, misrepresentation, and rescission claims. False promises or projections of profits can be the basis of a fraud action, but only if they are false representations of a past or present material fact. See Berg v. Xerxes-Southdale Office Bldg. Co., 290 N.W.2d 612, 615 (Minn. 1980); Davis v. Re-Trac Mfg. Corp., 149 N.W.2d 37, 39 (Minn. 1967). Otherwise, expected profits are irrelevant to misrepresentation claims because expected profits are not recoverable damages in Minnesota for fraud. See W.K.T. Distrib. Co. v. Sharp Elecs. Corp., 746 F.2d 1333, 1337 (8th Cir. 1984). In their amended complaint, the Growers did not even allege that the written pro forma statements, which contained various financial projections for raising broiler chickens in the poultry buildings, contained any specific misrepresentations of a past or present material fact. The written pro forma statements appear to be nothing more than future profit projections which, in hindsight, appear to have underestimated the expenses Growers actually incurred. In contrast, the cases cited by the Growers all involved clear misrepresentations of past or present material facts. See Commercial Prop., 938 F.2d at 876 (false representations of historical and present hotel occupancy rates); Berg, 290 N.W.2d at 615 (omission of present negative cash flow in the financial

projections); <u>Hollerman v. F.H. Peavey & Co.</u>, 130 N.W.2d 534, 538-39 (Minn. 1964) (false representations of no expected danger to chickens from disease when in fact there had been several serious outbreaks of disease prior to the signing of the contracts, and false representations as to the number of chickens grown under previous contracts which formed the basis of profit projections.) The Growers' attempt at remedying the lack of any material misrepresentation of a past or present fact, by filing a motion to reconsider along with new evidence allegedly showing that Herider knew that the borrowers' mortgage loans could not be paid off in seven or eight years, is too little and too late. Given that the new evidence appears to come from the public minutes of the City of Worthington's Finance Committee and not from any of Herider's documents, and given that the document at most proves only that Herdier believed that a ten-year, nine percent, fixed-rate building loan would provide an appropriate rate of return to Growers and not that this type of financing was the only way the Growers could ever make a profit under the terms of the contract, we find no abuse of discretion by the district court in denying the Growers' motion for reconsideration. <u>See</u> <u>Dubose v. Kelly</u>, 187 F.3d 999, 1002 (8th Cir. 1999) (treating motions under Local Rule 7.1(g) as motions under Fed. R. Civ. P. 59(e); <u>Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co.</u>, 69 F.3d 868, 871 (8th Cir. 1995) (setting forth abuse of discretion standard of review for a district court's denial of a motion for reconsideration under Fed. R. Civ. P. 59(e)).

In sum, we agree with the district court that most of Herider's alleged promises are plainly contradicted by the written terms of the contracts, and the remaining portions which are not plainly contradicted by the written contract nevertheless do not sufficiently allege the necessary misrepresentation of a past or present material fact to save the underlying claims of fraud, misrepresentation, and rescission from dismissal at the summary judgment stage. Any reliance on the alleged promises by the Growers is therefore unreasonable as a matter of law.

*Breach of Implied Covenant of Good Faith and Fair Dealing*

Given our determination that the district court did not err in finding that Herider had an unconditional right to terminate the contracts between flocks, and given that there is no evidence suggesting that Herider made it impossible for the Growers to perform the contract, the district court did not commit any error in dismissing the Growers' breach of implied covenant of good faith and fair dealing claim. See Michalski v. Bank of Am. Ariz., 66 F.3d 993, 997 (8th Cir. 1995) (holding that "Minnesota law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate from the underlying breach of contract claim") (citation omitted).

*Cross-Appeal--Liability Under Minnesota Statute Section 17.92*

Minnesota provides the following statutory protection to farmers entering into contracts for the production of agricultural commodities:

> A contractor must not terminate or cancel a contract that requires a producer of agricultural commodities to make a capital investment in buildings or equipment that cost $100,000 or more and have a useful life of five or more years until: (1) the producer has been given written notice of the intention to terminate or cancel the contract at least 180 days before the effective date of the termination or cancellation . . .; and (2) the producer has been reimbursed for damages incurred by an investment in buildings or equipment that was made for the purpose of meeting minimum requirements of the contract.

Minn. Stat. § 17.92, subd. 1 (1990). Herider argues that the district court erred in finding it liable for damages under section 17.92 because Herider claims it did not terminate the contracts but rather rendered alternative performance under the contracts, and any breach of its alternative performance obligations has been cured. The district court held that Herider's actions of terminating placements of chicks with the Growers and ceasing its payments to the Growers for the reasonable costs of financing construction amounted to termination of the contract within the meaning

of the statute. The court denied Herider's motion for summary judgment against any Grower that met the conditions of section 17.92 and whose contracts were entered into after the effective date of the statute.

We find no error in the district court's denial of summary judgment to Herider on the Growers' statutory claims. There is little doubt that Herider terminated its contracts with the Growers. Once further placements of flocks were terminated, the sole purpose of the contract could no longer be fulfilled. Thus, the termination of further placements of flocks with the Growers is, by definition, a termination of the broiler chicken production contract entered into by both parties. The payments for the reasonable cost of financing construction of the poultry houses guaranteed under the addenda to the contract to the Growers in the event of a premature termination by Herider (that is a termination occurring before 35 or 40 flocks had been placed) can be properly seen as damages for the premature termination and not, as Herider argues, simply an alternative means of performing the purpose of the contract. We also reject Herider's claim that Minnesota Rule 1572.0030, which provides that termination and cancellation under section 17.92 does not include the expiration of contracts, precludes statutory liability for Herider in this case. While we have recognized that Herider could terminate the contract any time there was not a flock in the barn, we simply do not believe that the contracts in this case could "expire" prior to the placement of 35 or 40 flocks. Herider's expiration versus termination argument may have more merit as the contracts continue beyond the 35 or 40 flocks, but we need not decide that issue for purposes of reaching our decision in this case. For these reasons, we affirm the district court's decision denying summary judgment to Herider on the Growers' statutory liability claims.

*Damages*

The Growers argue that the district court erred by unduly limiting their ability to introduce evidence as to the meaning of "reasonable cost of financing construction of a poultry house" and for the costs under section 17.92 for each Grower's

13

investment in buildings and equipment made for the purpose of meeting the minimum requirements of the contract, to which the district court correctly found the Growers were entitled under the contract and statute. The district court limited the parol evidence for determining the proper amounts of damages to the cost of the raw materials and labor for constructing the buildings, the cost of equipment and land required to make the buildings operational, and the corresponding interest rates, time periods, and loan terms. It did not allow evidence of any operating expenses, operating revenues, or lost profits. "We review a district court's decision to exclude evidence for [an] abuse of discretion." Yannacopoulos v. Gen. Dynamics Corp., 75 F.3d 1298, 1301 (8th Cir. 1996).

We find no abuse of discretion by the district court with respect to its evidentiary rulings on the Growers' contract damage claims. The Growers correctly argue that damages for the cost of financing construction of the poultry houses are broader than simply damages for the costs of construction. In our view, the district court's evidentiary rulings allowed them to show those broader damages to which they may be entitled. The Growers argue, however, that they are entitled to damages for the costs of financing both the construction and the operation of the poultry houses. This might be a reasonable interpretation of a contract providing for payment of damages for the reasonable cost of financing poultry houses. But the contract we must interpret in this case specifically says that the Growers are entitled to the reasonable cost of financing the *construction* of the poultry houses, and with the word "construction" in the contract language, we cannot say that the district court abused its discretion by precluding damages incurred in the operation of the poultry houses, including labor and operational expenses not covered by operational revenues. The wording of this particular contract provides strong support for the district court's ruling that contract damages (as opposed to fraud or misrepresentation damages) do not include payment of all unrecouped costs incurred while performing the contract.

14

For similar reasons, we find no abuse of discretion by the district court with respect to its evidentiary rulings on the Growers' statutory damage claims. Section 17.92 specifically covers only the costs of investment in buildings and equipment and makes no mention of any labor, management, or other operating expenses.

*Cross-Appeal--Attorneys' Fees*

Herider argues that it is entitled to attorneys' fees as a result of the Growers' breach of a promise not to sue. We respectfully disagree. Absent bad faith in bringing a lawsuit, attorneys' fees are not available under Minnesota law unless the contract specifically permits them or a statute specifically authorizes them. See Barr/Nelson, Inc. v. Tonto's, Inc., 336 N.W.2d 46, 53 (Minn. 1983). The contracts at issue here do not provide for a remedy of attorneys' fees in the event of a breach of a promise not to sue, Herider points to no statute authorizing this type of remedy in the event of a breach, and there is no evidence that the Growers' lawsuit was brought in bad faith. We further share the district court's legal doubt that the language relied upon by Herider as a covenant not to sue is such an agreement. Parties are free to bargain for the remedy of attorneys' fees, but Minnesota law precludes a court from implying that remedy into a contract. We therefore affirm the district court's decision denying attorneys' fees to Herider.

## III. Conclusion

For the foregoing reasons, we affirm in all respects the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

15